Well, it appears that counsel for appellant has not been able to appear, so does the government's lawyer want to make a statement? May it please the court, Jonathan Robbins here on behalf of the United States Attorney General. Well, if you'd like me to just proceed with a normal argument, I can certainly do that. As far as the – when you ask for a statement, are you just asking me to argue? You're here. Okay. Go forward. All right. Well, the government would respectfully request that this court deny the petition for review. I think it's – before I get to the substance of the board's decision, it's important to note that the court is actually applying two separate standards of review in this case because there are sort of two sections to the board's decision. The first section with respect to the nexus finding and with respect to the Mexican government's ability or willingness to control. All right. So focus on the second one for a second. That's independent, is it not? Yes, they are each independent. And what's our standard of review of that one? Both of the – for nexus and Mexican government's inability or willingness to control, it's both – both of those are reviewed for substantial evidence. That's why I thought – why do you think they're two – they're two independent questions, but it's the same standard of review. What I'm saying is that particular portion of the board's decision is one section of the board's decision. There's also a section of the board's decision that deals with a motion to remand. And if we were to find that there were substantial evidence to support the BIA's determination that there had not been a sufficient showing that the Mexican government was unwilling to protect the petitioner in this case, we would not have to reach the substantial nexus issue. Am I right? Correct. Because those two findings in the first part of the board's decision are independently dispositive. And so tell me why there was substantial evidence to support that second finding, if you would. Well, respectfully, Your Honor, before I even get to that. I know. You think it's waived. It certainly is. You think it's waived, but let's assume for a moment that it's not waived. Was there substantial evidence to support it? I do think there is. Your brief doesn't address that because you argue that it was waived. Right. It's difficult to defend a decision when we don't know how it's being attacked precisely, but I do think that substantial evidence supports that notion because – well, there's a couple of reasons. The – there's a Department of State report – Department of State country reports with respect to Mexico that says that there – that with respect to security forces that have been running rampant, it suggests that the Mexican government does have some effectiveness in being able to control that. It certainly acknowledges that there's corruption in the country and there's problems with cartels. And the I.J. reviewed that stuff, and it's in his – in his – It's not, Your Honor. The I.J.'s decision is a bit sparse in that regard. And had they challenged that issue, maybe they would have had a better claim. But again, this Court's case law is pretty clear that unless an issue is briefed in the opening brief, that issue should be deemed abandoned. And, of course, this case law says that that kind of issue can't be revived in a reply brief, but I would note in the reply brief that essentially what they say, they're suggesting that the Court should overlook the waiver for some reason. But it seems to me that if you're going to make that type of argument, that the Court should overlook its precedent that says that these should be deemed abandoned, you should at least make some type of substantive argument about why the Board's decision was an error. There's nothing like that in the – There's just some conclusory statements throughout the brief. In the opening brief, there's several statements along the way that sort of say, oh, no, the Mexican government wouldn't protect me. But they're not in the form of a legal argument, but there are statements that say that in the opening brief. Well, there are suggestions to that effect, but again, you know, it's sort of tied in with the scantness of the evidence in this case. You know, Petitioner doesn't really know what happened to his father. He doesn't really know what happened to his brother. He doesn't really know what happened to his sister. A lot of this is all speculative and circumstantial. And the nature of circumstantial evidence is that it's iffy. It can go either way. And under this Court's standard of review, if you can go both ways on evidence, the Court doesn't overturn or supplant it. So what I'm a little mystified about is why the IJ doesn't have – the IJ reaches a conclusion, but not really discussing the evidence on this, does it? Well, the IJ's decision with respect to that particular finding is on page 175. And what the IJ talks about prior to finding that there's nothing to indicate that the police would not have protected him is that he's referencing the instances where Petitioner was kidnapped. Right, the kidnapping. Yes. So on that, there's a clear finding that there's no evidence at the police. But is there a clear finding as to the balance of the claims here that there is no evidence? It's a little bit intertwined with the prior decisions, because one of the things that the IJ talks about is how there's not a link to the claim that Petitioner is making. Remember, the claim that he's saying is that all of these bad things that are happening are happening 20 years after 1994 when his father was killed. And he says that his mother at that point received a missive that threatened him and his older brother. And the immigration judge talked about how, well, these kidnappings don't really seem to match up with that, because this is twice, this is two instances where he claims that he was caught by the potential persecutors, even though he doesn't actually know who the persecutors are, and he was let go. So it doesn't seem to tie in very well with the claim that he's making with respect to everything starting with his father. And so with respect, I mean, so, you know, part of the claim that he's tied in is that he doesn't want to report these situations to the police because he believes that the police are involved. But the immigration judge is kind of pointing out that, well, these kidnappings don't really seem to be involved with that earlier claim that you were making. So I think I agree with you, the IJ's decision is a little bit sparse in that regard, but I think when you tie it into the earlier discussion that it's sort of easy to see why that the immigration judge is trying to, is basically saying that the link, or the failure to establish a link between these events that happened 20 years after the initial problem makes this kind of too speculative. And given the fact that he, yes. Yeah, that's what my question is. Why is it too speculative? So 1994, the dad is killed ostensibly by law enforcement or somebody connected with the gang. The mother gets notice, get those two boys out of the country or they're next. And then the next thing that happens in the sequence event is the brother shot and killed. And then the next thing that happens is his phone is taken and the sister who put up the money is then called with the deceased brother's phone and she's told, you're next. And then she's killed. And then you have the affidavit of the, is it the brother-in-law? That says this is all connected. And why, that doesn't seem speculative to me. Well, here's the situation, okay. I just want to emphasize now before I answer your question that we're now in the nexus portion of the finding of the board's decision, which the government has argued the court shouldn't actually reach because of the alternative finding regarding the Mexican government's ability or willingness to control. But with respect to that nexus, okay, oftentimes in these cases there's not going to be any direct evidence of a nexus, right? Persecutors don't always say I'm persecuted because of your father or because of your political opinion or whatever. So in those situations where an alien is before the agency, they're essentially asking the immigration judge to infer a nexus based on circumstantial evidence. As Judge Malloy recites, substantial evidence that the fear of persecution was because of his family membership, which is a protected group. Well, that's certainly the inference that Petitioner was asking to make. And the judge didn't find that it wasn't, did he, the immigration judge? Well, the immigration judge, well, it didn't, he didn't, excuse me, she didn't specifically say that, those words. But the whole discussion is how basically the evidence is so scant there's not really anything to go on. Remember, this theory of the case by Petitioner is just that, a theory. There's no actual, he actually admits that he doesn't know who killed his father, that he doesn't know who killed his sister, that he doesn't know who killed his brother. So if you're asking an immigration judge to infer a nexus and you want circumstantial evidence to be enough to do that, it helps if the circumstantial evidence that you're presenting doesn't actually in some cases in this record work against the theory that you're presenting. For example, again, he claimed that everything stemmed from this 1994 missive that his mother received where his brother and himself were threatened. And then, but then the immigration judge noted, well, wait a minute, you continued to reside there for four years and nothing ever happened to you. So that's circumstantial evidence that works against this notion that it's a family targeting. His sister was attacked, but the missive that he received in 1994 said that the brothers were the ones being threatened. Why is the sister now involved? And if the sort of animus against the family has changed to now include sisters, why are, at the time he filed his asylum application, he indicated there were multiple siblings living in Mexico. Why weren't those? So it's not just that the circumstantial evidence isn't enough to support an inference. Perhaps some immigration judges might make that inference in this case. But the problem is the evidence goes both ways here. And under this court standard of review, if the evidence goes both ways, you should defer to what the immigration judge does here. I wanted to ask you another question about the immigration judge's finding. The BIA uses the one central reason and says we affirmed the immigration judge's conclusion that this was not one central reason. Yes. But the immigration judge never says that, does she? Well, that, okay. She doesn't say, she doesn't appear to use the one central reason standard. She'd just say he hasn't established a clear probability of harm on account of a protected ground. Correct. So let's assume for a second that the BIA mistakenly characterizes what she held. Can we deny review because that's not what she actually held? Or does the BIA's? You mean grant the petition for review or deny the petition for review? Well, does the BIA's characterization of what she held control or what she actually held controls? Well, I don't think the Board actually made any new factual findings. No. It just said we affirm her conclusion that this wasn't one central ground for persecution, but she never made that conclusion as I read her DIJ's report. She just said there's not a clear probability of harm on account of a protected ground. Bear in mind that sometimes the immigration judge's decisions are oral. Sometimes they're not written out. I actually think she was, she did better than the BIA was suggesting. Well, I mean, the Board's decision is what's on review. Right. So, I mean, I think. I think so, yes. And that sort of brings me to Barajas-Romero. I'm sure Your Honors have seen most. Oh, am I running out? Red light. I'm sorry. So please just wrap up. Okay. Well, unless there are any further questions, I think I've said everything that needs to be said. So thank you very much for your time, Your Honors. Thank you. The case of Paris-Ollis v. Sessions is submitted. And we are adjourned for this session.
judges: Ikuta, Hurwitz, Molloy